FILED
CLERK, U.S. DISTRICT COURT
APR 26 2005
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

DOCKETED ON CM
APR 27 2005
BY ___

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE* CONSECO LIFE INSURANCE COMPANY COST OF INSURANCE LITIGATION | CASE NO. ML 04-1610 AHM (Mcx)<br><br>ORDER RE: CERTIFICATION OF "NATIONAL" CLASS |

## I

## INTRODUCTION

Plaintiffs move to certify the following "National" class as to causes of action one (breach of contract) and seven (declaratory relief) in the Consolidated Amended Complaint ("CAC"):

> All persons who owned a Lifestyle or Lifetime insurance policy issued by Massachusetts General Life Insurance Company, Philadelphia Life Insurance Company or Conseco Life Insurance Company as to which Conseco eliminated use of the "R Factor."

The proposed class would not include officers or actuaries (or their immediate families) of Massachusetts General Life Insurance Company, Philadelphia Life Insurance Company or Conseco Life Insurance Company or any of their parent companies or affiliates.

235

The CAC alleges seven causes of action:
1. Breach of contract
2. Breach of the Duty of Good Faith and Fair dealing (insurance bad faith)
3. Fraud and intentional misrepresentation
4. Fraudulent concealment
5. Injunctive and restitutionary relief pursuant to § 17200
6. Violations of Consumer Protection and Unfair Business Practices statutes
7. Declaratory relief

Plaintiffs allege that Defendant Conseco Life Insurance Company ("Conseco Life"), at the direction of Defendant Conseco, Inc. ("Conseco"), its ultimate parent, unlawfully increased the cost of insurance charges on Lifetime and Lifestyle insurance policies. CAC, ¶ 3. Defendants breached the express integrated terms of the policies by changing the formula by which the cost of insurance charge was determined (that is, by eliminating the use of the R-Factor in the formula used to calculate cost of insurance charges). *Id.*, ¶¶ 5-6.[1] In so doing, Defendants also breached their obligations of good faith and fair dealing and have defrauded Plaintiffs and members of the proposed class. *Id.*, ¶ 6.[2]

Plaintiffs allege that Defendants imposed the drastic cost of insurance increases to enhance the balance sheet of Conseco so that Conseco could raise

---

[1] There is an important distinction between "cost of insurance charge," which is the end result of the formula, and "cost of insurance rate," which is one factor in the formula for determining the "cost of insurance charge." The policies at issue allow Conseco to change the cost of insurance charge only by changing the cost of insurance rate. The policies contain different language regarding what can be a proper basis for changing the cost of insurance rate. See below. However, Defendants admitted at the hearing that they have never changed the cost of insurance rate. *See* Transcript of March 7, 2005 Hearing, p. 40:3-7. And Plaintiffs emphasized at the hearing that their breach of contract claim is based on Defendants' change in the formula for determining cost of insurance, not on any change in the cost of insurance rate. *Id.*, p. 37:12-16.

[2] Defendants have also moved to certify a "California" class as to these causes of action.

2

needed capital in the public financial markets after emerging from bankruptcy in 2003. CAC, ¶ 3. The cost of insurance increases allowed Defendants to erase hundreds of millions of dollars in liabilities from Conseco's balance sheet and eliminate increasingly unprofitable policies from their books to the great detriment of policyholders as policyholders were and are forced to surrender policies that have become prohibitively expensive. *Id.* Many of these policyholders are elderly and/or have medical conditions, and are left with reduced life insurance coverage or no life insurance coverage at all. *Id.*, ¶ 4.

Plaintiffs allege that Conseco exercised complete dominion and control over the affairs and actions of Conseco Life and there existed a unity of interest and ownership between Conseco Life and Conseco such that any individuality and separateness between Conseco Life and Conseco has ceased. *Id.* Therefore, Conseco is the *alter ego* of Conseco Life because Conseco Life is, and at all relevant times was, a shell, instrumentality and conduit through which Conseco carried on the business of insurance throughout the United States. *Id.*, ¶ 21.

## II

## THE PLAINTIFFS and RELEVANT POLICY FORMS

Plaintiff Murray Gomer ("Gomer"), 84, is a resident and citizen of the State of California who, in or about August 1987, became insured under a Lifestyle universal life insurance policy, number 10UL017930, issued by Conseco Life. CAC, ¶ 14. When originally issued and continuing through 2003, the policy had a face amount of $250,000. *Id.* Plaintiff Murray Gomer Irrevocable Trust is the owner of Gomer's insurance policy. CAC, ¶ 14.

Plaintiff Edwin Jacob Garn ("Garn"), 72, is a resident and citizen of the State of Utah who is or was the owner of three Conseco universal life insurance policies. CAC, ¶ 15 (Lifetime II policy, number 1090000341, issued August 16, 1991 with a face amount of $50,000; Lifetime II policy, number 1090000499, issued August 16, 1991, with a face amount of $50,000; and Lifestyle policy,

3

number 1090042970, issued June 4, 1992, with a fact amount of $250,000).[3] Each of Garn's policies was issued by Massachusetts General Life Insurance Company. *Id.*[4] Garn's policies were issued, serviced and administered by Massachusetts General/Conseco Life from the date of their issuance through late 2003 for the Lifestyle Policies and through the present for the Lifetime Policy. *Id.*

According to Defendants, R-Factor policies involve 22 different policy forms, issued in four series: 1986 (6 policy forms), 1991 (4 policy forms), 1992 (6 policy forms), and 1994 (6 policy forms). The policies contain differing language with regard to the determination of monthly cost of insurance rates. The ten policy forms from the 1986 and 1991 series (such as those held by Plaintiffs Garn and Gomer) contain the following provision:

> "Current monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience."

Opp'n, p. 9 (Turner Decl., Ex. B1, p. 16); CAC, ¶ 32.

The policy forms for the 1992 and 1994 series (held by thousands of potential class members) contain different language. They state:

> "Current monthly cost of insurance rates will be determined by the Company based on the policy cost factors described on page 15."

Opp'n, p. 9 (Turner Decl., Ex. B2, p. 38). At page 15, the policies state that "[a]ny change in policy cost factors (interest, cost of insurance and expense charges) will be based upon future expectations for such elements as: investment

---

[3] Plaintiffs have confirmed that Garn owned both kinds of policies and that the CAC incorrectly described his Lifestyle policy as a Lifetime policy. *See* Class Pl.'s Statement in Accordance with Order Dated April 4, 2005.

[4] Until 1996, Conseco Life was known as Massachusetts General Life Insurance Company ("Massachusetts General") and, in or about 1998, Philadelphia Life Insurance Company ("Philadelphia Life") was merged into Conseco Life. Both Massachusetts General and Philadelphia Life are now known as Conseco Life. CAC, ¶ 16.

4

earnings; mortality; persistency and expenses."[5] *Id.*, p. 44.

## III

## CLASS CERTIFICATION REQUIREMENTS

Federal Rule of Civil Procedure 23 establishes the standards for certifying a class action. Under Rule 23(a), class certification is appropriate where: (1) the proposed class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition to meeting the Rule 23(a) requirements, Plaintiffs also must satisfy one of the Rule 23(b) requirements.

The party seeking class certification bears the burden of establishing that she meets the requirements of Rule 23. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The Court must conduct a "rigorous analysis" to determine that the prerequisites are met, *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982), but a plaintiff seeking class certification need not make a prima facie showing that she will prevail on the merits of her substantive claims. *Murray v. Local 2620*, 192 F.R.D. 629, 631 (N.D. Cal. 2000). Rather, in reviewing a motion for class certification, the Court

---

[5] The fact that differing policy language is at issue here distinguishes this case from *Rosenbaum, et al. v. Philadelphia Life Ins. Co., et al.*, Case No. 93-0834 MRP (Eex) (C.D. Cal.) ("Rosenbaum"), where Judge Pfaelzer certified a national class (breach of contract claim) and California class (insurance bad faith claim) of "all persons who own or owned the life insurance policies of defendants on or after April 1, 1992 and to and including June 30, 1994, containing the language 'actual monthly cost of insurance rates will be determined by the company based on its expectations as to future mortality experience' and for whom the defendants passed on a portion of the DAC tax liability by increasing the cost of insurance rates." *See* Dillon Decl. filed November 22, 2004, Ex. C, p. 21. *Rosenbaum* did not involve policyholders owning a 1992 or 1994 series policy.

generally is bound to take the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F. 2d 891, 901 n. 17 (9th Cir. 1975). The Court will look beyond the pleadings only when necessary to decide whether the Rule 23 requirements have been satisfied. *Bates v. United Parcel Service*, 204 F.R.D. 440, 443-44 (N.D. Cal. 2001). If the moving party has met her burden under Rule 23, the Court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

In certifying a class, the court should keep in mind the dual purposes of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. 7A Wright, Miller & Kane, *Federal Practice & Procedure 2d* ("Wright") § 1754; Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, § 10:250 (The Rutter Group 2003).

### A. Definition of the Class

"An essential prerequisite of an action under Rule 23 is that there must be a 'class.'" Wright, § 1760. However, the contours of the class need not be so clear that every potential member may be identified at the time of class certification. *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (citing Wright, § 1760). Rather, "a class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* (citing *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D.Cal.1977)).

Defendants argue that Plaintiffs' initial proposed class definition was overbroad because it had no temporal limitation, selected policies without regard to whether they had anything to do with the R-Factor, and failed to take into account differences in policy language. However, Plaintiffs submitted the class definition that is quoted at the beginning of this Order with their reply papers, and the revised definition responded in part to Defendants' objections. The modified

6

class specifically relates to holders of policies from which the R-Factor was eliminated.

Plaintiffs' modified class does not provide an express temporal limitation. Such an express limitation may not be necessary, however, because the proposed class would consist only of those policyholders who had the R-Factor eliminated from their policy, and Plaintiffs allege that the R-Factor was eliminated from Lifestyle policies effective October 2003 and from Lifetime policies effective May 2004. CAC, ¶¶ 99-100. In any event, a time reference could be added to the definition for greater clarity as follows:

> All persons who owned a Lifestyle or Lifetime insurance policy issued by Massachusetts General Life Insurance Company, Philadelphia Life Insurance Company or Conseco Life Insurance Company as to which Conseco eliminated use of the "R Factor" **in October 2003 or May 2004.**

This class definition would include policyholders who cancelled their policies after the R-Factor was eliminated (such as Garn), as well as those who have kept their policies and paid an increased charge (such as Gomer). It would <u>not</u> include those who canceled their policies after receiving notice of the impending cost increase but before the R-Factor was eliminated and the cost increase actually took effect.

**B.     Rule 23(a) Requirements**

   **1.     Numerosity and Commonality**

Defendants do not dispute that the numerosity or commonality requirements of Rule 23(a)(1) and (a)(2) are met. At the hearing, Plaintiffs' counsel indicated that there are approximately 90,000 members of the proposed "National" class. The issue of whether the elimination of the R-Factor constituted a breach of contract is an issue common to all class members, and the Court concludes that the proposed class meets both the numerosity and commonality requirements.

   **2.     Typicality**

1   The typicality requirement "is designed to assure that the named
2   representative's interests are aligned with those of the class." *Jordan v. County of*
3   *Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.), *vacated and remanded on other*
4   *grounds*, 459 U.S. 860 (1982). Where such an alignment exists, a representative
5   who vigorously pursues her own interests will necessarily advance the interests of
6   the class. *Id.* The Ninth Circuit interprets the Rule 23(a) typicality requirement
7   permissively. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998). A
8   named plaintiff must be a member of the class she seeks to represent and must
9   "possess the same interest and suffer the same injury" as class members. *Falcon*,
10  457 U.S. at 156. Named plaintiffs' claims need not be identical to the claims of
11  the class; rather, their claims are typical if they are "reasonably co-extensive with
12  those of absent class members." *Hanlon*, 150 F.3d at 1020. It is sufficient for the
13  plaintiffs' claims to "arise from the same remedial and legal theories." *Arnold v.*
14  *United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994). "As
15  long as the named representative's claim arises from the same event, practice, or
16  course of conduct that forms the basis of the class claims, and is based upon the
17  same legal theory, varying factual differences between the claims or defenses of
18  the class and the class representative will not render the named representative's
19  claim atypical." *Jordan*, at 1321.
20  Plaintiffs argue that typicality is met because the named Plaintiffs' claims
21  arise out of the same common course of Conseco's conduct as those of all other
22  policyholders and that Conseco applied the R-Factor to all the policies at issue for
23  many years, and then increased the cost of insurance by removing it for all
24  policies, including those held by the named Plaintiffs.
25  Defendants combine their challenges to typicality and adequacy of
26  representation in one section of their opposition. That is understandable. *See*
27  *Jordan*, 699 F.2d at 1321 (the typicality requirement of 23(a)(3) is closely related
28  to the commonality inquiry of 23(a)(2) and the adequacy inquiry of 23 (a)(4)).

1  Defendants' objections are that (a) Garn's and Gomer's policies contain policy
2  language that differs from potential class members; (b) Garn and Gomer are
3  subject to a defense that does not apply to at least half the putative class
4  members: a so-called *Dupell* Release;[6] (c) Garn and Gomer surrendered their
5  policies and did not execute individual releases that were executed by many other
6  class members; and (d) Garn and Gomer contend they were unaware of the R-
7  Factor until they received notice of the R-Factor change, whereas other
8  policyholders admit that, to varying degrees, they had knowledge of the R-Factor.

### a. Differing Policy Language

According to Defendants, the named Plaintiffs do not have typical claims and will not adequately represent the entire class because their policies contain different language with regard to determining the cost of insurance rate from that of other class members, rendering their breach of contract claims not typical of the entire class.

Plaintiffs argue that Conseco raises a distinction without a difference. Plaintiffs emphasize that all versions of the policies contain the critical uniform provision governing the methodology by which the cost of insurance charge is calculated, and neither version permits Defendants to increase the amount deducted from the accumulation accounts by materially changing the method for calculating the cost of insurance charges.

The distinction between the 1986, 1991, 1992 and 1994 policy forms does not matter with regard to Plaintiffs' breach of contract claim because that claim is simply that, in a manner common to all those policies, Defendants unlawfully changed the formula for determining the cost of insurance charge. Although these various forms do contain differences in the authorized factors for

---

[6] Based on a settlement in the California action entitled *Dupell v. Massachusetts General Life Ins. Co.*, Santa Clara Superior Court, CV 7689991 (2000).

9

determining the monthly cost of insurance *rate*, plaintiffs do not claim that Defendants unlawfully changed that rate. Therefore, the differences in the policy language do not render the named Plaintiffs' claims atypical or mean that those plaintiffs will not adequately represent the class.

Moreover, any gap in typicality almost certainly could be cured by adding Jonathan Alexander, named plaintiff in *Glucksman, et al. v. Conseco Life Ins. Co.*, CV 04-6694, consolidated in this MDL proceeding, as a class representative. Alexander was issued a policy form containing the revised monthly cost of insurance rate language in the 1992 and 1994 series. At the very least, Alexander could represent a sub-class of those policyholders who were issued the 1992 or 1994 series forms. That way, if (as does not seem likely) the differing language turns out to affect the merits of certain class members' claims, the two groups can be treated separately.

### b. The *Dupell* Release

In *Dupell v. Massachusetts General Life Ins. Co.*, Santa Clara Superior Court, CV 7689991 (2000), the Court certified a nationwide class of all persons who had purchased universal life policies from Massachusetts General Life (which later become Conseco Life) and who had sued for negligence, fraud and statutory violations. Plaintiffs in *Dupell* did not assert a breach of contract claim. Later, they entered into a settlement containing a very broad release of:

> any and all causes of actions, claims, damages, equitable, legal and administrative relief . . . that have been, could have been, may be or could be alleged or asserted now or in the future . . . on the basis of, connected with, arising out of, or related to . . . the Released Transactions and servicing relating to the Released Transactions."

White Decl., Ex. C12, p. 124 (§ 29 of the *Dupell* settlement). The settlement defined "Released Transactions" broadly, to include, among many other things, "the marketing, solicitation, . . . [and] charges for insurance" of any policy. *Id.*

The settlement also included a Cal Civ. Code § 1542 waiver.[7] *Id.*, p. 127. Garn and Gomer did not opt-out of the *Dupell* class, so Defendants argue that their claims here are precluded and thus they are not typical plaintiffs, making certification inappropriate.

Plaintiffs respond that the *Dupell* Release extends only to claims based on the "identical factual predicate" as those in the settled *Dupell* action. *Howard v. America On-Line, Inc.*, 208 F.3d 741, 747 (9th Cir. 2000). In addition, *Dupell* was a vanishing premium case. Here, Plaintiffs challenge the increase in the cost of insurance resulting from removal of the R-Factors years after the *Dupell* release was entered. For these reasons, Plaintiffs argue, the *Dupell* Release does not operate as a defense to the named Plaintiffs or to any class members. In addition, they contend that the issue of the scope and enforceability of the *Dupell* release is suitable for class-wide resolution, so it should not frustrate class certification.

In *Howard*, a settlement in a previous state court class action brought by AOL subscribers unequivocally barred claims that "arise out of or are related to the matters referred to" in the state court complaint. *Howard*, at 747. The plaintiffs in *Howard* sought to use as predicate RICO acts the identical billing allegations that the state plaintiffs had alleged in their complaint. Applying California law, the Ninth Circuit ruled that the plaintiffs in *Howard* fell within the class that settled the state lawsuit and held that they could not use those allegations as predicate acts. Although *Howard* did not hold that only claims based on the identical factual predicate can be released, the plaintiffs in *Howard* sought to bring claims against AOL that were identical to those in the prior suit.

---

[7] § 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

11

1  Plaintiffs here are bringing entirely unrelated claims; therefore, the facts of
2  *Howard* are distinguishable and its holding is not applicable.
3  In *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992),
4  the Court noted that "a federal court may release not only those claims alleged in
5  the complaint, but also a claim 'based on the identical factual predicate as that
6  underlying the claims in the settled class action even though the claim was not
7  presented *and might not have been presentable in the class action*.'" (citation
8  deleted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d
9  Cir. 2005) (plaintiffs' authority to release claims in a class action settlement is
10 limited by, among other things, the "identical factual predicate" doctrine).
11 Plaintiffs' breach of contract claims here are not based on the identical factual
12 predicate as the *Dupell* claims and involve actions by Defendants that first
13 occurred years after the *Dupell* settlement and that therefore could not have been
14 asserted in the *Dupell* litigation. In short, the *Dupell* Release, as broad as it is,
15 cannot bar Plaintiffs' (or other policyholders') breach of contract claim for
16 elimination of the R-Factor, and is not a bar to class certification.

### c. Individual Releases and Surrender of Policies

The typicality requirement is not met if the proposed class representative is subject to unique defenses. *Hanon v. Data Products Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Defendants note that some policyholders chose to surrender their policies after receiving notice from Conseco Life of the impending cost increase and signed a general release in exchange for a waiver of surrender charges.[8] Defendants mistakenly state that both Garn and Gomer did not execute such a general release. To the contrary, Garn surrendered his policy and executed a purported release while Gomer did not surrender his policy (instead, he reduced the amount of his coverage). Because Garn is typical of those who executed a

---

[8] It appears that approximately 20,500 class members terminated or surrendered their policies. Hoyer Decl., ¶ 20.

release and Gomer is typical of those who did not, the full membership of the class would be adequately represented by named Plaintiffs. For that reason, Defendants' objections and case citations are inapposite.

### d. Knowledge of R-Factor

Defendants' final objection to typicality is that whether policyholders knew of Defendants' use of the R-Factor before it was discontinued varies greatly. That is irrelevant to a breach of contract claim based on the terms of the policy and the course of conduct under the policy. Whether some but not all policyholders knew of the existence of the R-Factor cannot determine whether Defendants had a contractual right to eliminate it. Therefore, differences in their knowledge do not affect typicality.

To summarize, the claims of the named Plaintiffs are the same as those of the class members and are based on the same legal theories. The typicality requirement is met.

### 3. Adequacy of Representation

Before certifying a class under Rule 23, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This depends on two questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F. 3d at 1020.

Defendants do not challenge the adequacy of class counsel, and the Court finds that this final requirement of Rule 23(a) is also met.

### C. Rule 23(b) Requirements

Plaintiffs must also establish that the requirements of one of the three subdivisions of Rule 23(b) are met. I find that the requirements of 23(b)(2) are met.

Certification under Rule 23(b)(2) is appropriate where the opposing party

"has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) class actions are limited to those class actions seeking primarily injunctive or corresponding relief, and were designed for civil rights cases. *Newberg on Class Actions*, § 4.11 (December 1992). Rule 23(b)(2) "is designed for all-or-none cases in which final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." *Jefferson v. Ingersoll Intern. Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). Plaintiffs correctly note that an alternative prayer for money damages does not necessarily preclude Rule (b)(2) certification. *Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234, 1240) (9th Cir. 1998). However, because members of a Rule 23(b)(2) class "do not have the right to opt-out . . . if the action involves 'substantial monetary damages,' maintenance of a mandatory Rule 23(b)(2) class is inappropriate and violative of minimum due process." *Molski v. Gleich*, 307 F.3d 1155, 1165 (9th Cir. 2002).

The parties dispute whether this case is primarily about injunctive and equitable relief or money damages. The Ninth Circuit "has not defined a clear test for when monetary damages are the primary remedy sought, or incidental to a request for injunctive or declaratory relief." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 241 (C.D. Cal. 2003). In *Westways*, travel agencies brought a class action against certain airlines and airline ticketing clearinghouses alleging, among other things, breach of contract and RICO violations arising out of an ongoing scheme to collect penalties for alleged tariff violations. The District Court stated that "this issue requires a declaration of the invalidity and unenforceability of the alleged contractual basis for [the defendant's] actions." The Court certified the proposed class under Rule 23(b)(2), concluding that "Plaintiffs' request for monetary damages is incidental to their demand for

equitable relief" because the "gravamen of Plaintiffs' complaint is that defendants had no contractual or other legal basis" for taking the actions that they did and that damages would flow directly from a finding in Plaintiffs' favor without substantial or complex determinations regarding each plaintiff's case. *Id.*, at 241-42.

Plaintiffs assert that this case is "materially indistinguishable" from *Westways World Travel.* Not so. Nevertheless, the facts and reasoning of *Westways* do support Rule 23(b)(2) certification here. As in *Westways*, Plaintiffs assert that Defendants had no contractual or other legal basis for eliminating the R-Factor; damages would flow directly from a finding that there was a breach; and the relief sought is not exclusively or predominantly money damages. To the contrary, the case is substantially about equitable relief: Plaintiffs want the R-Factor reimposed, their account values restored as if the R-Factor had not been removed, and reinstatement of surrendered policies or a claims facility set up for those who cannot reinstate. The money damages they seek are relatively incidental. *See Newberg on Class Actions*, § 4.14, p. 5-50-51 ("When the parties dispute which form of relief is predominant . . . it is counterproductive for the court to expend time to try to resolve this largely discretionary question, which does not address the merits of the case. Rather, the court should conclude that when the Rule 23(a) prerequisites are satisfied and declaratory or injunctive relief is sought as an integral part of the relief for the class, then Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief for class members.")

Although notice of the class action and an opportunity to opt out of the class are not required under Rule 23(b)(2), I will require such notice and opportunity to opt out, both because money damages are at issue and because some plaintiffs with large claims may prefer to pursue actions individually. *Molski v. Gleich*, 318 F.3d 937, 951, n. 16 (9th Cir. 2003) (district court can

certify under (b)(2) and require notice and an opportunity to opt out pursuant to its 23(d)(2) powers).

## CONCLUSION

For the reasons stated above, the Court hereby certifies the following National class as to causes of action one and seven in the CAC:

> All persons who owned a Lifestyle or Lifetime insurance policy issued by Massachusetts General Life Insurance Company, Philadelphia Life Insurance Company or Conseco Life Insurance Company as to which Conseco eliminated use of the "R Factor" in October 2003 or May 2004.

IT IS SO ORDERED.

DATE: April 26, 2005

_____
A. Howard Matz
United States District Judge